# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3639

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff–Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| Alisha Rae Parisien, | * | |
| | * | |
| Defendant–Appellant. | * | |

_____

Submitted: May 11, 2005
Filed: June 30, 2005

_____

Before WOLLMAN, BYE, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Alisha Rae Parisien of felony larceny under 18 U.S.C. § 661 for embezzling more than $1,000 from her employer over the course of eight months. Parisien appeals, arguing because she never stole more than $1,000 on any given occasion, all she committed was a series of misdemeanors and it was improper for the district court[1] to allow the jury to aggregate the embezzled amounts to convict her of a felony. We affirm.

_____

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

I

Parisien worked as a cashier at Jollie's Super Market in Belcourt, North Dakota. Parisien began embezzling money from her till because of a gambling habit, which sometimes left her unable to pay for necessities. Initially, Parisien took small amounts on limited occasions (for example, the first time she embezzled enough to buy diapers for her child). The thefts, however, eventually increased both in frequency and magnitude not only to replace money she had gambled away but also to provide additional money for further gambling. Towards the end of her employment, Parisien committed ten fraudulent transactions totaling $1,663 in a five-day period. At trial, the government submitted evidence showing the total embezzled over eight months equaled approximately $13,000. The evidence also showed, however, Parisien never took more than $1,000 on a single occasion.

Parisien accomplished the embezzlement by manipulating three different types of transactions. The first type of transaction is a return transaction. In a return transaction, a cashier would refund money to a customer when a product was returned following a completed purchase. Parisien improperly obtained a manager's secret code, which allowed her to generate a return transaction without an actual return. Parisien would generate false customer returns and take money from the till without replacing the products to their respective departments.

The second type of transaction is known as an "error correct" or a void. An error correct occurs when a customer is checking out from the grocery store and changes his or her mind about purchasing one item out of several while at the check-out. Using an error correct, the cashier is able to remove the relevant item from the customer's bill prior to totaling it up. Parisien would key a high-priced item into her till without an actual product and then void the transaction with an error correct, pocketing cash equal to the value of the error correct.

The third type involved ATM transactions. A customer wishing to withdraw cash from the ATM located on the premises would only receive a receipt instead of cash. The customer would have to bring the receipt to the cashier to receive the actual money. The receipts were then used in lieu of cash for calculating transactions when closing out the till after each shift. Parisien keyed ATM transactions into her register and removed money from her till without a receipt. Parisien used this type of transaction to obtain the majority of the funds she embezzled.

In February 2003, Jollie's discovered through an audit process that ATM transactions had been occurring at Parisien's till without ATM tickets accounting for the funds given. Jollie's also reviewed statements received from Port Enterprises, the company that facilitated the ATM, which also showed discrepancies between the ATM transactions keyed in Parisien's till and the actual receipts generated by the ATM.

On January 14, 2004, a federal grand jury indicted Parisien on one count of felony larceny in violation of 18 U.S.C. § 661.[2] Section 661 sets forth a felony charge for individuals who take another's property if the value exceeds $1,000. If the value of property is less than $1,000, the individual would instead be charged with a misdemeanor. At trial, one of the issues was whether the loss amount from each of Parisien's individual fraudulent transactions – all of which were less than $1,000 – could be aggregated to reach the level necessary to support the felony charge. The district court instructed the jury that in order to determine Parisien committed a felony, the jury must find Parisien stole more than $1,000 during a continuing course of conduct, meaning at some point Parisien formed an intent to steal money on a continual basis and thereafter stole in excess of $1,000. This determination would

---

[2]Parisien is an enrolled member of the Turtle Mountain Band of Chippewa, and Belcourt is located in Indian Country, giving the federal courts jurisdiction over this offense. See 18 U.S.C. § 1153.

allow the jury to convict Parisien of a felony, rather than individual misdemeanors for each incident. The jury found Parisien guilty of felony larceny. Parisien filed a timely appeal, claiming the evidence was insufficient to support a felony conviction. Furthermore, Parisien claimed federal authorities lacked authority to prosecute her for misdemeanor conduct.

II

"We review the sufficiency of the evidence to sustain a conviction de novo." United States v. Rodriguez-Mendez, 336 F.3d 692, 695 (8th Cir. 2003). The evidence is reviewed in the light most favorable to the verdict and all reasonable inferences are accepted as established. United States v. Kamerud, 326 F.3d 1008, 1012 (8th Cir. 2003). The verdict must be affirmed "unless no reasonable jury would have found each essential element of the crime beyond a reasonable doubt." United States v. Morin, 338 F.3d 838, 844 (8th Cir. 2003).

"Generally, the question whether a series of takings constitutes one or more than one offense . . . must turn on the factual circumstances of each case." United States v. Billingslea, 603 F.2d 515, 520 (5th Cir. 1979). A series of offenses can be aggregated into one offense when they are composed of a "formulation of a plan or scheme or the setting up of a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis." Id. Acts forming an integral part of the first taking which facilitate subsequent takings, or acts taken in preparation of several takings which facilitate subsequent takings, are relevant to determine the party's intent to commit a continuing crime. A party's intent is also illustrated by the "temporal and geographical proximity of the several takings." Id. Thus, when all acts result from a continuing course of conduct, they may be aggregated into one crime.

-4-

Like the Fifth Circuit in Billingslea, other jurisdictions also allow for aggregation of a series of takings if they occur within a continuing course of conduct. See United States v. Smith, 373 F.3d 561, 564 (4th Cir. 2004) (ruling aggregation can be applied where the defendant's act "evidences the intent to establish a mechanism for the automatic and continuous receipt of funds for an indefinite period"); United States v. Papia, 910 F.2d 1357, 1364-65 (7th Cir. 1990) (adopting the aggregate approach articulated in Billingslea).

The district court instructed the jury it could find Parisien "engaged in a continuing course of conduct if at some point during the time frame alleged in the Indictment, she intended or planned to steal money on a continual basis, and thereafter stole more than $1,000." Gov't App. at 1. Parisien contends the district court should have focused the jury's attention only on her intent at the time of the first taking. We disagree.

In determining an intent to steal money on a continual basis, the jury was free to consider not only Parisien's state of mind at the initial taking, Billingslea, 603 F.2d at 520 ("Of critical importance is the state of mind or intent of the actor prior to and simultaneously with the first taking."), but also subsequent acts she performed which may have facilitated further takings, id. ("Closely related, and of equal importance, is evidence of acts done by the accused . . . in preparation for . . . several takings . . . which facilitate the subsequent takings or in some way aid the defendant in accomplishing them."). Here, there was evidence Parisien took preparatory acts which facilitated subsequent takings. For example, Parisien admitted she inappropriately obtained a manager's secret code which she used on several occasions to perform false return transactions. Moreover, the jury could consider the temporal proximity of the takings in determining Parisien's intent. Id. While in the beginning Parisien's thefts were in small amounts and sporadic, towards the end of the embezzlement period Parisien's thefts were more frequent and much larger. Parisien's takings became so frequent that, at one point, she took over $1,000 in one

week.  Parisien admitted to an investigator she engaged in the takings whenever she could without getting caught.  She testified she started taking small amounts, but then got "greedy."  The district court properly instructed the jury Parisien was guilty of a felony offense if – at some point during the relevant time period – she formed the intent to steal on a continual basis and thereafter stole in excess of $1,000, even if that was not her original intent.

Parisien also contends there was insufficient evidence to show she formed an intent to steal over $1,000 because she is a pathological gambler.  Parisien had an expert testify at trial she was a pathological gambler.  Parisien's theory was that she did not form the intent to steal on a continual basis because each time she gambled she believed she would win big and, as a result, no longer need to steal from Jollie's.  The jury was, however, free to disregard Parisien's theory.  United States v. Ervasti, 201 F.3d 1029, 1037 (8th Cir. 2000).  "Intent is an issue that turns in large part on the credibility and demeanor of witnesses, and is peculiarly within the province of the jury."  United States v. Erdman, 953 F.2d 387, 391 (8th Cir. 1992) (quoting United States v. Long, 952 F.2d 1520, 1525 (8th Cir. 1991)).

III

The evidence was sufficient to support the jury's conclusion Parisien – at some point during the time period alleged in the indictment – formed an intent to steal on a continual basis and thereafter stole more than $1,000.  Therefore, we affirm.[3]

_____

[3]Because we affirm Parisien's felony conviction, her challenge to the district court's jurisdiction over her alleged misdemeanor conduct is no longer at issue and thus will not be addressed.