UNITED STATES, Appellant

v.

Shawn M. HINES, Sergeant
U.S. Army, Appellee

No. 13-5010

Crim. App. No. 20120024

United States Court of Appeals for the Armed Forces

Argued November 18, 2013

Decided February 24, 2014

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN, STUCKY, and OHLSON, JJ., joined.


Counsel

For Appellant:  Captain T. Campbell Warner (argued); Colonel John P. Carrell, Lieutenant Colonel James L. Varley, and Major Catherine L. Brantley (on brief).

For Appellee:  Captain Robert N. Michaels (argued); Colonel Kevin Boyle, Lieutenant Colonel Jonathan F. Potter, and Major Jacob D. Bashore (on brief).


Military Judge:  Timothy Grammel


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Consistent with his pleas, a military judge sitting as a general court-martial convicted Appellee of two specifications of making a false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 907 (2012), two specifications of larceny of military property of a value more than $500.00, in violation of Article 121, UCMJ, 10 U.S.C. § 921 (2012), and one specification of wrongful appropriation of military property of a value more than $500.00, also in violation of Article 121, UCMJ. The adjudged sentence provided for confinement for a period of three months, forfeiture of all pay and allowances, reduction to E-1, and a bad-conduct discharge. The convening authority approved the adjudged sentence, except for the forfeitures, and ordered all but the bad-conduct discharge executed.

The values alleged for the three Article 121, UCMJ, offenses were based on aggregating amounts wrongfully taken over a period of months at three separate locations. Before the United States Army Court of Criminal Appeals (ACCA), Appellee argued that the military judge erred by accepting his pleas to larceny and wrongful appropriation of military property of a value over $500.00 when he providently pled only to a value of less than $500.00. On May 24, 2013, the ACCA agreed, holding that theft of Basic Allowance for Housing (BAH) and Family

Separation Allowance (FSA) occurring over multiple months "amounts to a separate larceny each month the money is received," because the receipt of funds did not occur at the "same time and place." United States v. Hines, No. ACM 20120024, slip op. at 3 (A. Ct. Crim. App. May 24, 2013) (citation and internal quotation marks omitted). In the alternative, it held that the pleas were improvident because the military judge failed to resolve a matter raised during the providence inquiry, which was inconsistent with the pleas. The ACCA thus affirmed findings only to larceny and wrongful appropriation of military property of a value less than $500.00, in addition to the Article 107, UCMJ, charge and specifications. Id. It nonetheless affirmed the sentence, citing United States v. Sales, 22 M.J. 305 (C.M.A. 1986). Id. at 3–4.

On August 5, 2013, on certification under Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012), the Judge Advocate General of the Army (TJAG) asked this Court to consider the following questions:

> I.  WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT APPELLEE'S PLEAS TO SPECIFICATIONS 1, 2, AND 3 OF CHARGE II WERE IMPROVIDENT BECAUSE THEFT OF BASIC ALLOWANCE FOR HOUSING AND FAMILY SEPARATION ALLOWANCE OCCURRING OVER MULTIPLE MONTHS "AMOUNTS TO A SEPARATE LARCENY EACH MONTH THE MONEY IS RECEIVED."
>
> II. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED WHEN IT HELD THAT APPELLEE'S PLEAS TO SPECIFICATIONS 1 AND 3 OF CHARGE II WERE IMPROVIDENT BECAUSE THE MILITARY JUDGE "NEVER SATISFACTORILY RESOLVED THE INCONSISTENCY

3

> BETWEEN [APPELLEE'S] PLEAS TO THE ENTIRE AMOUNT [OF BASIC ALLOWANCE FOR HOUSING] IN LIGHT OF HIS APPARENT ENTITLEMENT TO A LESSER AMOUNT."

We answer both certified questions in the affirmative. As a threshold matter, we expressly adopt the reasoning and holding of United States v. Billingslea, 603 F.2d 515, 520 (5th Cir. 1979): "[T]he formulation of a plan or scheme or the setting up of a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis, will produce but one crime." Thus, under the circumstances of this case, each specification properly aggregated money wrongfully obtained on a recurring basis and alleged a larceny of military property of a value greater than $500.00.

Moreover, we disagree that the military judge "never satisfactorily resolved the inconsistency between [Appellee's] pleas to the entire amount in light of his apparent entitlement to a lesser amount." Hines, No. ACM 20120024, slip op. at 3. To the extent any inconsistency was interjected into the providence inquiry, it was definitively resolved when Appellee noted he had not satisfied any condition precedent to obtain BAH without dependents (BAH-WITHOUT), and was not entitled to any BAH.

The decision of the ACCA is reversed.

4

## I.   FACTS

On May 27, 2008, Appellee was stationed at Fort Bragg, North Carolina, when his divorce became final.  Before his divorce, Appellee was receiving BAH at the with-dependent rate (BAH-WITH) based on his status as a married active duty servicemember.  Although Appellee was obligated to submit paperwork to finance to alert them to this change in status, he failed to do so.  If he had, he would have stopped receiving BAH-WITH entitlements immediately.  Instead, Appellee collected BAH-WITH at the Fort Bragg rate from May 27, 2008, until October 19, 2010, when he executed Permanent Change of Station (PCS) orders.  During this time, Appellee received $30,623.27 in BAH-WITH through monthly payments, each of which exceeded $500.00.

While still at Fort Bragg, Appellee deployed to Afghanistan in April 2009.  Upon arrival in Afghanistan, Appellee completed DD Form 1561, "Statement to Substantiate Payment of Family Separation Allowance," on which he affirmatively certified that he was not divorced or legally separated from his spouse.  As a result, from April 21, 2009, until June 8, 2010, Appellee received $3,408.33 in FSA through monthly payments, each of which was less than $500.00.

When Appellee returned from Afghanistan in June 2010, he remained at Fort Bragg until October 19, 2010, when he executed PCS orders to Fort Campbell, Kentucky.  When he arrived there,

5

Appellee submitted two documents -- DA Form 5960, "Authorization to Start, Stop, or Change Basic Allowance for Quarters," and DD Form 1351-2, "Travel Voucher."  On both documents he stated that he was married.  Because of these documents, Appellee received BAH-WITH at the Fort Campbell rate totaling $5,328.00 through monthly payments from October 19, 2010, until April 18, 2011, each of which was greater than $500.00, with the exception of the final prorated payment.[1]

In April 2011, Appellee's ex-wife contacted officials at Fort Campbell and reported that she had reason to believe he continued to claim her as a dependent.  The Government then charged Appellee, as relevant to the certified issues, under Charge II, with three separate larceny specifications of military property of a value over $500.00, each occurring over different periods of time, at the three locations referenced above, in violation of Article 121, UCMJ.  Each specification alleged that SGT Hines "did . . . steal . . . entitlements, military property, of a value of more than $500.00."

---

[1] The PCS benefits for Appellee's nonexistent spouse appear not to be included in the larceny offense specification for Fort Campbell.

Appellee entered into a pretrial agreement to plead guilty to all of the specifications as amended, as well as into a stipulation of fact.[2]

During the providence inquiry, the military judge explained to Appellee, inter alia, that in order to be guilty of all of the Charge II offenses it must be true "that the property [taken] was of a value of more than $500.[00]." In the course of both having Appellee describe the facts supporting his guilty pleas and discussing the stipulation of fact, the military judge discussed the value of property that Appellee obtained and noted that he "want[ed] to make sure that the stipulation of fact [was] correct." Appellee admitted to larceny and wrongful appropriation of government property in an amount greater than $500.00, and confirmed that the amounts of BAH and FSA he wrongfully received were the total amounts listed in paragraphs six, eight, and ten of the stipulation of fact.

Appellee also admitted that he was not entitled to receive any BAH. At both Fort Bragg and Fort Campbell, single soldiers without dependents are not entitled to BAH-WITHOUT unless they seek and receive a "Certificate of Non-Availability" (CNA). Appellee did not apply for a CNA at either location.

---

[2] After discussing the specifications at a Rule for Courts-Martial (R.C.M.) 802 conference, Charge II, Specification 3, was amended without objection to reflect the lesser included offense of wrongful appropriation.

Referencing paragraph nine of the stipulation of fact, the military judge asked Appellee whether it was correct that "if you had gone through the channels and requested other entitlements, like, to live off post and to get [the BAH-WITHOUT] rate, then it's likely that you would have . . . been authorized to do that and obtain that."  Appellee answered the question in the affirmative and went on to explain that he did not go through any of the steps necessary to receive BAH-WITHOUT, and therefore was not entitled to any BAH.

## II.  ACCA DECISION

On appeal, the ACCA held as a matter of law that charging the offenses listed under Charge II "as continuing crimes, aggregating the total amount of money" at each location was improper and that "theft of BAH, under these circumstances, amounts to a separate larceny each month the money is received." Hines, No. ACM 20120024, slip op. at 2-3.

The ACCA went on to conclude that Appellee "would have been entitled to the [BAH-WITHOUT] rate" at both Fort Campbell and Fort Bragg.  Id. at 3.  As such, "[d]uring the providence inquiry [Appellee] repeatedly stated that he understood that he was not entitled to BAH-WITH in a fashion expressing the understanding that he was entitled to [the BAH-WITHOUT] rate." Id.  Therefore, the ACCA held that "[Appellee] never satisfactorily admitted to a single larceny in an amount over

8

$500.00 and only providently admitted to a series of separate larcenies each in an amount less than $500.00."  Id.

III.  DISCUSSION

A.

The question whether wrongful receipt of money on a recurring basis constitutes one crime for the total amount, or multiple offenses for the amount received in each instance, is a question of law, which we review de novo.  United States v. Watson, 71 M.J. 54, 56 (C.A.A.F. 2012).  We disagree with the ACCA's conclusion that there could not be a "continuing larceny of an aggregated amount" solely because the monthly amounts were not taken "at substantially the same time and place."  Hines, No. ACM 20120024, slip op. at 3 (citation and internal quotation marks omitted).  The weight of authority is precisely to the contrary.

While the Manual for Courts-Martial, United States, pt. IV, para. 46.c.(1)(h)(ii) (2008 ed.) (MCM) notes that multiple article larceny is to be charged as a single larceny "[w]hen a larceny of several articles is committed at substantially the same time and place," and the "articles belong to different persons," this is merely one, and not the only, situation where a single charge is proper.  That amounts were wrongfully received on a recurring basis at different times and places

9

raises the question whether there was one crime or several

crimes -- it does not end the inquiry.

Instead, whether there were separate offenses each month or

a single offense aggregating all months, turns on the specific

factual circumstances of each case.  And that inquiry focuses on

the actor "at or near the starting point of the illegal

activity."  See Billingslea, 603 F.2d at 520.  Facts important

to this analysis include "the state of mind or intent of the

actor prior to and simultaneously with the first taking," and

also, "evidence of acts done by the accused, either in

preparation for the several takings or as [an] integral part of

the first taking, which facilitate the subsequent takings or in

some way aid the defendant in accomplishing them."  Id.

Considering these factors, we agree that "the formulation

of a plan or scheme or the setting up of a mechanism which, when

put into operation, will result in the taking or diversion of

sums of money on a recurring basis, will produce but one crime."

Id.; accord United States v. Bolden, 28 M.J. 127, 129 (C.M.A.

1989) (accepting the "theory of [the accused's] criminal

liability" where the government charged the accused in the

aggregate for "intentionally overstat[ing] the rent he was

paying" to "receive[] each month an allowance greater than he

was entitled to").  "Conversely, if all that can be attributed

to the accused is an original intent to purloin and the evidence

merely shows that this intent was acted on from time to time, the nature of the acts must be measured by the separate takings."[3]  Billingslea, 603 F.2d at 520.  This approach is consistent with the approach of other federal courts, which have also adopted the Billingslea framework.  See, e.g., United States v. Parisien, 413 F.3d 924, 926 (8th Cir. 2005); United States v. Smith, 373 F.3d 561, 563–64, 568 (4th Cir. 2004); United States v. Papia, 910 F.2d 1357, 1364–65 (7th Cir. 1990).[4]

Applying the Billingslea framework to the facts of this case, we have no trouble concluding that there were two acts of larceny, and one of wrongful appropriation, each for military property of a value over $500.00 -- which is what the Government charged, and what Appellee pleaded guilty to.  Appellee's

---

[3] The authority Appellee cites to suggest that aggregation is improper is inapposite as all the cases are examples of situations where the acts must be measured by the separate takings:  each of those cases presents a situation where takings occurred not merely at different times and places, but also required distinct and separate acts to effectuate each crime. See United States v. Mincey, 42 M.J. 376, 377 (C.A.A.F. 1995) (involving multiple specifications of uttering bad checks); United States v. Poole, 24 M.J. 539, 541 (C.M.A. 1987) (involving multiple specifications of uttering bad checks); United States v. Davis, 16 C.M.A. 207, 208, 36 C.M.R. 363, 364 (1966) (involving representations "on each of several separate occasions, to different finance officers in different places, that he was serving" in a higher grade).

[4] The Billingslea framework for analysis is better adapted to the particular circumstances of each case than the more narrow three-part test developed by the United States Navy-Marine Corps Court of Criminal Appeals in United States v. Lepresti, 52 M.J. 644, 653 (N-M. Ct. Crim. App. 1999).

wrongful receipt of BAH-WITH at Fort Bragg resulted from his failure to apprise finance that he no longer had dependents, as he acknowledged he was obligated to do. It was that failure to act that provided the means by which Appellee received money to which he was not entitled on a recurring basis of a total value over $500.00, as charged in Specification 3.

Similarly, the record is clear that the sole reasons Appellee received FSA and BAH-WITH of a value over $500.00 in Specifications 1 and 2 were the affirmative acts of completing military forms, which fraudulently stated he remained married to his ex-wife. Appellee completed DD Form 1561 in Afghanistan, asserting he was married, and knowing that he would receive FSA during the course of his deployment based on the form. And Appellee completed DA Form 5960, knowing and intending that he would receive monthly BAH-WITH at Fort Campbell on a continuing basis as a result. There is no question that submission of these forms was the mechanism for "the taking or diversion of sums of money on a recurring basis." Billingslea, 603 F.2d at 520.

Under the circumstances of this case, aggregation of the monthly amounts paid on a recurring basis into three specifications alleging a value over $500.00, where there were three distinct mechanisms by which money was wrongfully received at three different locations, was appropriate. Accord R.C.M.

12

307(c)(4) ("What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person.").

B.

Appellee argues in the alternative, and the ACCA held, that the providence inquiry and stipulation of fact set up a matter inconsistent with his pleas that the military judge did not satisfactorily resolve. We disagree.

"'In determining whether a guilty plea is provident, the military judge may consider the facts contained in the stipulation [of fact] along with the inquiry of [Appellee] on the record.'" United States v. Whitaker, 72 M.J. 292, 293 (C.A.A.F. 2013) (first alteration in original) (citation omitted). "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." United States v. Goodman, 70 M.J. 396, 399 (C.A.A.F. 2011) (citation and internal quotation marks omitted). "This court must find 'a substantial conflict between the plea and the accused's statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." Watson, 71 M.J. at 58 (citation omitted).

Appellee argues, consistent with the ACCA's holding, that the military judge abused his discretion because he "never

13

satisfactorily resolved the inconsistency between [Appellee]'s pleas to the entire amount [of BAH in an amount over $500.00] in light of his apparent entitlement to a lesser amount." Hines, No. ACM 20120024, slip op. at 3. The assertion is that an inconsistency was established during the providence inquiry with respect to the value of the entitlements obtained at both Fort Campbell and Fort Bragg since Appellee was theoretically entitled to the BAH-WITHOUT rate, as opposed to not being entitled to any BAH, and the monthly difference between BAH-WITH and BAH-WITHOUT was less than $500.00.[5] Id.

There is an obvious flaw with the reasoning behind this portion of the ACCA opinion. While the discussion of theoretical entitlement to BAH-WITHOUT contained in paragraph nine of the stipulation of fact raised more questions than it answered, the same stipulation of fact made very clear that the condition precedent for being entitled to any BAH -- seeking and receiving a CNA -- had not been fulfilled.

And while the ACCA opined that Appellee "repeatedly stated that he understood that he was not entitled to BAH-WITH in a fashion expressing the understanding that he was entitled to [the BAH-WITHOUT] rate," Hines, No. ACM 20120024, slip op. at 3,

---

[5] In a sense this is irrelevant because the factual circumstances of this case permitted aggregation of the monthly totals at each location into a single specification. Once aggregated, even the difference between BAH-WITH and BAH-WITHOUT would be well in excess of $500.00.

14

the record is precisely to the contrary.  In the providence inquiry, Appellee admitted that he was not entitled to any BAH. Additionally, when asked to state the amount wrongfully taken at both Fort Campbell and Fort Bragg, Appellee cited the entire aggregate amount of BAH-WITH, rather than the difference between the BAH-WITH and BAH-WITHOUT rate, and stated that each amount was over $500.00.

To the extent that any inconsistency was raised by paragraph nine of the stipulation of fact, it was fully resolved by the military judge during the providence inquiry.

## IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is reversed and the record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further proceedings under Article 66, UCMJ, 10 U.S.C. § 866 (2012).