# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39017**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Sergiy O. ALYOKHIN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 10 August 2017

———————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Dishonorable discharge, confinement for 21 months, and reduction to E-1. Sentence adjudged 20 October 2015 by GCM convened at Ramstein Air Base, Germany.

*For Appellant:* Captain Allen S. Abrams, USAF.

*For Appellee:* Major Clayton H. O'Connor, USAF; Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and MINK, *Appellate Military Judges.*

Chief Judge DREW delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge MINK joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

DREW, Chief Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of two specifications of possessing child pornography and two specifications of distributing child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The

military judge sentenced him to a dishonorable discharge, confinement for 21 months, and reduction to E-1.[1] The convening authority approved the adjudged sentence.

Appellant contends that (1) his pleas to the Charge and its Specifications were improvident, (2) his conviction for possession of child pornography is, in part, factually and legally insufficient, and (3) he is entitled to sentence appropriateness relief resulting from post-trial delay from the trial to the convening authority's action.[2] We find that Appellant's plea to possessing child pornography was improvident as to one of the images alleged. We also find the military judge erred during the providence inquiry by providing Appellant an inapplicable definition. We nevertheless find that his pleas to all specifications were otherwise provident. Having revised the specification with the erroneous image, we reassess the sentence. We affirm the findings, as modified, and sentence, as reassessed.

## I. BACKGROUND

Each of the four specifications of child pornography alleged that Appellant wrongfully possessed or distributed images or videos of actual minors engaged in sexually explicit conduct. In discussing the offenses with Appellant, the military judge defined "child pornography" as follows:

> Child pornography means material that contains a visual depiction *of an actual minor* engaging in sexually explicit conduct. *It also means* material that contains an obscene visual depiction of a minor engaging in sexually explicit conduct. Such a depiction *need not involve an actual minor, but instead only what appears to be a minor*.

(Emphasis added.)

---

[1] Pursuant to a pretrial agreement (PTA), the convening authority withdrew and dismissed with prejudice the Additional Charge and its Specification, alleging indecent visual recording, in violation of Article 120c, UCMJ, 10 U.S.C. § 920c. The only sentence limitation in the PTA was an agreement by the convening authority to disapprove any confinement in excess of 24 months. The PTA thus had no impact on the adjudged sentence.

[2] Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant also personally raised two issues alleging that the specifications are multiplicious or an unreasonable multiplication of charges. On the record, Appellant expressly waived these issues as part of his PTA. The issues do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

The military judge defined "sexually explicit conduct" as follows:

> Sexually explicit conduct means actual or simulated sexual intercourse or sodomy, including genital to genital, oral to genital, anal-genital, or oral-anal, whether it be between persons of the same or opposite sex; includes bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person.

The military judge defined "lascivious exhibition" as follows:

> Lascivious means exciting sexual desires or marked by lust. Not every exposure of the genitals or pubic area constitutes lascivious exhibition. Consideration of the overall content of the visual depiction should be made in determining if it constitutes a lascivious exhibition. In making this determination, the panel would consider such factors as whether the focal point of the depiction is on the genitals or pubic area, whether the setting is sexually suggested [sic], whether the child is depicted in an unnatural pose or in inappropriate attire considering the child's age, whether the child is partially clothed or nude, whether the depiction suggests sexual coyness or willingness to engage in sexual activity, and whether the depiction is intended or designed to elicit a sexual response in the viewer, as well as any other factors that may qualify, if not more important, in determining whether the visual depiction contains a lascivious exhibition. A visual depiction, however, need not involve all those factors in order to meet that definition.

The military judge also informed Appellant that:

> You are advised that you could not be convicted of possessing child pornography if you did not know that the images were of minors *or what appears to be minors* engaged in sexually explicit conduct.

(Emphasis added.)

In response to the military judge asking Appellant to tell him, in Appellant's own words, why he thought he was guilty of possession of child pornography images (Specification 1), Appellant responded:

> I downloaded and possessed 17 images of child pornography showing obscene visual depictions of minors *or what appeared to be minors* engaging in sexually explicit conduct.
>
> . . . .

3

> I possessed these files fully knowing that they contained ob-
> scene visual depictions of minors, *or what appeared to be mi-*
> *nors*, engaging in sexually explicit conduct.

(Emphasis added.)

Appellant gave similar descriptions when describing his actions for the possession of child pornography videos (Specification 2), distribution of child pornography images (Specification 3), and distribution of child pornography videos (Specification 4); each time Appellant described the child pornography as containing minors *or what appeared to be minors*. For Specifications 2–4, the military judge referred back to his previous definition of child pornography without ever narrowing the definition to directly correspond to the language of the specifications alleging only actual minors.[3]

The providence inquiry also included a discussion between the military judge and Appellant about Prosecution Exhibit 1, a stipulation of fact. The stipulation of fact was signed by Appellant, his civilian and military defense counsel, and the two trial counsel. The stipulation mirrors the providence inquiry in that it includes "minors, or what appear to be minors" in several places. It is clear that Appellant, the military judge, and all counsel believed that "minors, or what appear to be minors" was the appropriate definition to apply to the four specifications.

Nevertheless, the stipulation also included one paragraph (paragraph 9) describing each of the specific images and videos Appellant was charged with possessing and another paragraph (paragraph 12) describing each of the specific images and videos Appellant was charged with distributing. Each of the descriptions include the relative age of the child or children in the image or video, for example, "6–8 years old," "approximately three years old," "approximately five years old," "young female child," and "prepubescent or pubescent males." None of the descriptions include the word "appear" in describing the relative age. All of the described ages indicate that the depicted children were actually younger than 18. However, in subsequent paragraphs of the stipulation of fact, the description paragraphs are summarized in the following fashion: "Each image or video described in Paragraph 9 is a depiction of minors (*or what appear to be minors*) . . . . Each of the image [sic] or video [sic] described in Paragraph 12 is a depiction of minors, *or what appear to be minors* . . . ." (Emphasis added.)

---

[3] None of the specifications use the word "actual." Rather they simply allege "minors" without including the optional "or what appears to be minors."

During the providence inquiry, the military judge referred Appellant to paragraphs 9 and 12 of the stipulation of fact and asked him if he agreed that the descriptions were accurate. Each time, Appellant confirmed that they were. In concluding their discussion about each specification, the military judge asked Appellant if he admitted that child pornography contained images and videos of minors:

Q. Do you agree and admit that at or near Steinwenden, Germany, between on or about 7 October 2013 and on or about 9 July 2014, you knowingly and wrongfully possessed child pornography to wit: digital images of minors engaged in sexually explicit conduct entitled as set forth in Specification 1 of the Charge?

A. Yes, Your Honor.

. . . .

Q. Do you agree and admit that at or near Steinwenden, Germany, between on or about 7 October 2013 and on or about 9 July 2014, you knowingly and wrongfully possessed child pornography to wit: digital videos of minors engaged in sexually explicit conduct entitled as set forth in Specification 2 of the Charge?

A. Yes, Your Honor.

. . . .

Q. Do you agree and admit that at or near Steinwenden, Germany, on divers occasions between on or about 7 October 2013 and on or about 7 [sic] July 2014, you knowingly and wrongfully distributed child pornography to wit: digital images of minors engaged in sexually explicit conduct, entitled as set forth in Specification 3 of the Charge?

A. Yes, sir.

. . . .

Q. Do you agree and admit that at or near Steinwenden, Germany, on divers occasions between on or about 7 October 2013 and on or about 9 July 2014, you knowingly and wrongfully distributed child pornography to wit: digital videos of minors engaged in sexually explicit conduct entitled as set forth in Specification 4 of the Charge?

A. Yes, sir.

## II. DISCUSSION

### A. Providence of the Plea

"We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). "The military judge must question the accused under oath about the offenses to ensure there is an adequate factual basis for a guilty plea." *United States v. Mull*, ___ M.J. ___ , No. ACM S32367, 2017 CCA LEXIS 421, at *5 (A.F. Ct. Crim. App. 22 Jun. 2017); Rule for Courts-Martial (R.C.M.) 910(e); *see also* Article 45(a), UCMJ, 10 U.S.C. § 845(a). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis . . . ." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). However, we look to the entire record to determine whether there is a substantial basis to question the guilty plea. *United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002).

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *Moon*, 73 M.J. at 386 (quoting *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014)). We "must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (quoting *Hines*, 73 M.J. at 124).

In military jurisprudence, the offenses of possessing and distributing child pornography are generally based on 18 U.S.C. § 2252A, as well as military custom and regulation. *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), App. 23, ¶ 68b. The military offenses criminalize conduct involving minors and what appear to be minors. The sample specification in the *MCM* includes "of a minor, or what appears to be a minor." *MCM*, pt. IV, ¶ 68b.f. On the other hand, in the model specification in the *Military Judges' Benchbook* "or what appears to be a minor" is an optional parenthetical phrase. *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9, ¶ 3–68b-1.b. (10 Sep. 2014). The *Benchbook* includes two definitions of child pornography and provides guidance to military judges as to which definition to use:

> *Defining "child pornography."* The definition of "child pornography" used below will depend upon the evidence presented. The first definition below should be given where actual minors are in issue. The second definition below should be given where the depictions do not involve the use of actual minors, or there is some question as to whether actual minors were used in the depictions. If appropriate, give both definitions.

*Benchbook*, ¶ 3–68b-1.d. Note 2.

In this case, the Government chose to deviate from the *MCM* standard specification and, following the *Benchbook* model specification, omitted the "or what appears to be a minor" language. However, in addition to the definition of child pornography applicable to "an actual minor," the military judge also provided Appellant with the optional, but in this case inapplicable, definition involving "what appears to be a minor." This was error. This error was compounded by similar comments about "or what appears to be a minor" made by the military judge at other points of the providence inquiry, by the Prosecution's inclusion of similar language in the stipulation of fact, and by the military judge's failure to correct or clarify Appellant's use of similar language in his discussion during the providence inquiry.

In determining whether Appellant's plea is provident, we do not limit our review only to the providence inquiry, but rather we look to the entire record to determine whether Appellant was convinced of, and was able to describe, all of the facts necessary to establish his guilt. Appellant agreed that the descriptions in paragraphs 9 and 12 of the stipulation of fact accurately described each of the images and videos he possessed and distributed. Those descriptions clearly indicated that the children in these digital files were actual minors and not any form of digitally manipulated virtual children. It is certainly understandable for Appellant to have personally not been certain as to the specific age of some of the older children depicted. However, he could, and did, properly rely upon his counsel's investigation of his case and the opinions of the National Center for Missing and Exploited Children and other experts. In the end, Appellant was convinced and adequately described that the images and videos in each specification portrayed actual minors. We have reviewed them as well and are likewise convinced.

We are nevertheless concerned that the evidence before the military judge was inconsistent with Appellant's plea of wrongfully possessing one of the 17 images listed in Specification 1 of the Charge, *t\*\*\*\*s.jpg*. Paragraph 9.f. of the stipulation of fact described *t\*\*\*\*s.jpg* as: "[a]n image of a prepubescent or pubescent female standing beside an exercise bicycle, wearing a small bikini top and removing a bikini bottom. The words, 'FATHER / DAUGHTER TRADE: e-mail or skype: [Appellant's email address]' are imposed in four

lines across the image." We have reviewed *t****s.jpg* and our independent review does not support the description that the minor in the image was removing the bikini bottom she was wearing. After reviewing the image himself, the military judge did not address that inconsistency with Appellant.

For the image to constitute child pornography, the depicted minor would have to be engaging in sexually explicit conduct. Of the various examples of sexually explicit conduct defined by the military judge (and based on 18 U.S.C. § 2256(2)(A)), the only one that potentially applied to the image was a lascivious exhibition of the genitals or pubic area, even though the minor in the image remained fully clothed in a bikini top and bikini bottom. The military judge correctly defined lascivious exhibition for Appellant using the so-called "*Dost* factors." *See United States v. Roderick*, 62 M.J. 425, 429–30 (C.A.A.F. 2006) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987)). In determining a lascivious exhibition, military courts combine a review of the *Dost* factors with an overall consideration of the totality of the circumstances. *Roderick*, 62 M.J. at 430.

The military judge abused his discretion by failing to elicit from Appellant a factual basis to conclude that *t****s.jpg* constituted a lascivious exhibition of the genitals or pubic area. Accordingly, we find that Appellant's plea to Specification 1 of the Charge was improvident as to the word "t****s.jpg." We find that Appellant's pleas to the remainder of Specification 1 and to Specifications 2–4 of the Charge were provident. We except out the word "t****s.jpg" from Specification 1 and reassess Appellant's sentence in light of our action.

### B. Legal and Factual Sufficiency

Appellant challenges the legal and factual sufficiency of whether one image he was convicted of possessing, *t****s.jpg*, constituted child pornography. In light of our decision regarding the providence of Appellant's plea to Specification 1 of the Charge, his legal and factual sufficiency challenge is moot.

### C. Timely Appellate Review

One hundred and thirty-nine days elapsed between announcement of sentence and convening authority action. Nevertheless, we do not find that sentence relief is warranted.

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Accordingly, we review de novo whether Appellant has been denied his due process right to a speedy post-trial review and appeal. *Id.* In *Moreno*, the Court of Appeals for the Armed Forces established a presumption of unreasonable post-trial delay that requires a due process re-

view when the convening authority does not take action within 120 days of trial. *Id.* at 142.

If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially-unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136. Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno*, 63 M.J. at 136. However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Under *Moreno*, the period of 139 days between sentence and action in this case is presumptively unreasonable, exceeding the standard by 19 days and triggering a full due process review. 63 M.J. at 142. However, the relatively modest delay beyond 120 days was entirely at the request of Appellant and made with full knowledge that if the Government agreed to grant his request for additional time to submit clemency matters, the post-trial processing would exceed the 120 day standard. In response to the staff judge advocate's email advising civilian defense counsel of the implications of his delay request, counsel responded: "I have discussed this issue with [Appellant], he has agreed to the requested extension, and the defense concedes that [Appellant] would not be prejudiced by the additional 20 days." We agree and will not second-guess Appellant's conscious decision to delay the post-trial processing of his case beyond 120 days. Accordingly, we find no due process violation.

Although we find no due process violation in Appellant's case, we nonetheless consider whether Article 66(c), UCMJ, 10 U.S.C. § 866(c) relief pursuant to *United States v. Tardif* is appropriate. 57 M.J. 219, 224 (C.A.A.F.

2002). We are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive.[4] Applying these factors and considering the circumstances of Appellant's case, we are not moved to reduce an otherwise appropriate sentence imposed by the military judge and approved by the convening authority based on post-trial delay.

### D. Sentence Reassessment

Having found error in accepting Appellant's plea to possessing the *t****s.jpg* image, we must determine whether Appellant was prejudiced. The test for prejudice is "whether the error substantially influenced the adjudged sentence." *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009); *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005); *United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). This image was one of 17 images that the military judge convicted Appellant of possessing. The other images were much more graphic and many of them involved far younger children.

We have "broad discretion" in deciding to reassess a sentence to cure error, as well as arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). To reassess the sentence, we must be able to reliably conclude that, in the absence of error, the sentence "would have been at least of a certain magnitude," and the reassessed sentence must be "no greater than that which would have been imposed if the prejudicial error had not been committed." *United States v. Sales*, 22 M.J. 305, 307, 308 (C.M.A. 1986). We must be able to determine this to a "degree of certainty." *United States v. Eversole*, 53 M.J. 132, 137 (C.A.A.F. 2000). "The standard for reassessment is not what would be imposed at a rehearing but what would have been imposed at the original trial absent the error." *United States v. Taylor*, 47 M.J. 322, 325 (C.A.A.F. 1997). A reassessed sentence "must be purged of prejudicial error and also must be 'appropriate' for the offense[s]

---

[4] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is nonetheless evidence of harm (either to the appellant or institutionally) caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) whether, given the passage of time, whether this court can provide meaningful relief in this particular situation. *Gay*, 74 M.J. at 744, *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

involved" based on our sentence approval obligation under Article 66(c), UCMJ. *Sales*, 22 M.J. at 308.

In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances, including the following illustrative, but not dispositive, factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the offenses remaining after we have corrected the error capture the gravamen of the criminal conduct included within the original offenses, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we, as appellate judges, have the experience and familiarity to reliably determine what sentence would have been imposed at trial by the sentencing authority. *Winckelmann*, 73 M.J. at 15–16.

We are mindful that the penalty landscape and exposure has not changed; the forum was judge-alone; the offenses of which Appellant was convicted remain the same; significant aggravating evidence in the stipulation of fact remains admissible and relevant; and this court has extensive experience and familiarity with Appellant's offenses, sufficient for us to reliably determine what sentence would have been imposed by the military judge without the *t****s.jpg* image. In consideration of these factors, we readily conclude that we can reassess the sentence in this case. We are satisfied that, based on the facts and circumstances surrounding the commission of Appellant's offenses, the military judge would have imposed the same sentence he adjudged: a dishonorable discharge, confinement for 21 months, and reduction to E-1.

We have also concluded that the reassessed sentence is appropriate. We assess sentence appropriateness by considering Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982); *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006), *aff'd*, 65 M.J. 35 (2007). We are convinced that the reassessed sentence is not inappropriately severe.

### III. CONCLUSION

The approved findings, as modified, and sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court